UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

KHALAIRE ALLAH,

                                  Plaintiff,

              v.

SCOTT P. RYAN, Corr. Officer (FPTS), et al.,

                                  Defendants.
_____

<u>DECISION AND ORDER</u>

14-CV-6029L

Plaintiff Khalaire Allah, appearing *pro se*, commenced this action under 42 U.S.C. § 1983. Plaintiff, an inmate in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), has sued nine individuals, all of whom at all relevant times were employed by DOCCS.[1] Plaintiff alleges that defendants violated his federal constitutional rights in a number of respects, generally in connection with certain events that occurred in 2013, while plaintiff was confined at Five Points Correctional Facility.

Defendants have moved for summary judgment dismissing the complaint. Plaintiff has cross-moved for summary judgment as to the liability of defendants T. Levac and Michael Sheahan. For the reasons that follow, defendants' motion is granted, plaintiff's cross-motion is denied, and the complaint is dismissed.

---

[1] On January 13, 2015, after screening the complaint pursuant to 28 U.S.C. §§ 1915(e) and 1915A, the Court issued a Decision and Order (Dkt. #8) dismissing plaintiff's claims against a tenth defendant, identified as "Giannino," who conducted a disciplinary hearing on March 29, 2013, stemming from matters that occurred prior to the May 8 incident. *See* Dkt. #8.

# BACKGROUND

In May 2013, plaintiff was confined within the Residential Mental Health Unit ("RMHU") at Five Points. He alleges that he was scheduled to be moved to another gallery within RMHU. Apparently this would have been an upgrade, because plaintiff states that it was based on "positive behavior" warranting his "progression to phase II status." Complaint (Dkt. #1) at 2, ¶ 1.

Plaintiff alleges that his transfer was unjustifiably postponed, largely in retaliation for his having filed grievances against some correction officers ("C.O.s"). On May 8, 2013, however, plaintiff was allegedly told by C.O. Rautenstrauch that he would not be moved because plaintiff had exposed himself to C.O. Arquitt. *Id.* ¶ 8. Plaintiff also alleges that Rautenstrauch placed a "yellow sign" in plaintiff's cell window, presumably identifying plaintiff as an "exposer." *Id.*

That same day, plaintiff complained to Sergeant Robert Adams that Rautenstrauch had "set [plaintiff] up" to thwart plaintiff's impending move to Phase II. Plaintiff alleges that while he was speaking to Adams, Rautenstrauch came by and joined the conversation.

Plaintiff alleges that Rautenstrauch threatened to hurt plaintiff for having complained about some prior incidents, to which plaintiff responded that neither Rautenstrauch nor "his partner Ryan won't do shit to me." *Id.* ¶ 12.

At that point, according to plaintiff, Adams told Rautenstrauch to prepare for a cell extraction. After C.O. Scott Ryan arrived, Adams allegedly told Rautenstrauch and Ryan that "this was their opportunity to blow off some steam" and that they should hit plaintiff hard when the cell door was opened. *Id.* ¶ 13.

To summarize plaintiff's allegations, when the cell door opened, Rautenstrauch, Ryan, Arquitt and Adams, wearing helmets and using shields, "attacked" plaintiff. Plaintiff alleges that he sustained various physical injuries, including lacerations and injuries to his left shoulder and right eye. Plaintiff was then taken to the facility infirmary, where photographs were taken and he was given medical treatment.

Later that day, plaintiff was taken to the Office of Mental Health ("OMH") unit. The next day, he was required to wear an "exposer jumpsuit" any time he was out of his cell, and a yellow "exposer" placard was placed above his cell door. ¶¶ 20, 21. An exposer jumpsuit (sometimes referred to as an exposure jumpsuit or a control suit) is "a jumpsuit designed to prevent the wearer from removing it," so as to prevent him from exposing himself to others. *Barrow v. Farago*, 707 Fed.Appx. 57, 58 (2d Cir. 2017).

On May 21, 2013, plaintiff was served with two misbehavior reports, both stemming from the May 8 incident. One report, prepared by defendant Arquitt, alleged lewd conduct and interference with an employee. (Dkt. #16 at 28.) The other, prepared by Adams, charged plaintiff with assault on staff, violent conduct, creating a disturbance, refusing a direct order, and possession of an altered item. The last charge was based on Adams's allegation that plaintiff was found to have a broken plastic spoon that he had used to make slashing motions to his wrist, after threatening to harm himself. (Dkt. #16 at 35.)

Following a Tier III hearing on the first charge, hearing officer Lt. Levac found plaintiff guilty and sentenced him to twelve months in the Special Housing Unit ("SHU") and loss of good time. On administrative appeal, Director of Special Housing and Inmate Discipline Albert Prack reversed Levac's decision and ordered a rehearing, because an inmate witness had refused

to testify at the hearing, after initially agreeing to testify. Prack stated that the inmate's refusal created a duty of further inquiry on the part of the hearing officer. (Dkt. #16 at 34.)

Another hearing was held on the second charge, also before Levac, and plaintiff was found guilty. He was sentenced to 36 months in SHU and loss of good time and privileges. On administrative appeal, that decision was also reversed, with directions to hold a rehearing. (Dkt. #16 at 43.) Although plaintiff raised several grounds in his administrative appeal, the decision does not state the reason for the reversal.[2]

The complaint sets forth additional allegations, many of which do not set forth any dates, so it is difficult to make out a precise timeline or a coherent narrative of the events. Some of the allegations relate to events that occurred prior to the May 8 incident. To some extent, those allegations are fleshed out by plaintiff's papers in support of his cross-motion.

In general, plaintiff alleges that defendants continually retaliated against him for having complained about various matters. *See* Complaint ¶ 38 (stating that "after each complaint, some kind of retaliation took place"). The alleged retaliation generally consisted of false misbehavior reports and denial of, or interference with medical care. *See*, *e.g.*, Complaint ¶¶ 38, 40, 42, 54, 56. Again, much of this relates to plaintiff's assertion that he was improperly denied a transfer to Phase II status. Plaintiff names several individuals in connection with these allegations, beyond those mentioned above, including Deputy Superintendent of Security Paul Piccolo, Superintendent Michael Sheahan, Residential Mental Health Unit "Chief" Tom Schlee, and Executive Assistant Commissioner Diane Van Buren.

---

[2] It is not apparent whether rehearings were ever held, and if so, what the outcomes were.

Plaintiff also alleges that based on one of the guilty findings on the disciplinary charges against him, he was required to wear an "exposer jumpsuit" for thirty days. Complaint ¶ 58.

Under the heading "Statement of Claim," plaintiff's complaint sets out seven claims: (1) due process; (2) false arrest; (3) excessive force; (4) failure to protect; (5) search and seizure; (6) malicious prosecution; and (7) equal protection. (Dkt. #1 at 16.) Named as defendants are Ryan, Arquitt, Adams, Levac, Piccolo, Sheahan, Schlee, Giannino (*see* n.1, *supra*), Rautenstrauch, and Van Buren.

## DISCUSSION

**I. Summary Judgment Standard**

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment should be granted if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Court should grant summary judgment if, after considering the evidence in the light most favorable to the nonmoving party, the court finds that no rational jury could find in favor of that party. *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

"The moving party bears the burden of showing the absence of a genuine dispute as to any material fact ... ." *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 486 (2d Cir. 2014). "Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof

at trial." *Johnson v. Xerox Corp.*, 838 F.Supp.2d 99, 103 (W.D.N.Y. 2011) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). Once the moving party has met his burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (quoting *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011)). Specifically, the non-moving party "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown*, 654 F.3d at 358. "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

A party may file a motion for summary judgment "at any time until 30 days after the close of all discovery." Fed. R. Civ. P. 56(b). In addition, a party may move for summary judgment in lieu of an answer to the complaint. *See Anderson v. Rochester-Genesee Regional Transp. Auth.*, 337 F.3d 201, 202 (2d Cir. 2003); *Abreu v. Farley*, No. 11-CV-6251, 2019 WL 1230778, at *5 (W.D.N.Y. Mar. 15, 2019). Although summary judgment is often inappropriate until after some discovery has been had, *see Nelson v. Deming*, 140 F.Supp.3d 248, 257-58 (W.D.N.Y. 2015), a motion for summary judgment in lieu of an answer may properly be granted where the material facts are undisputed and no amount of discovery would change the outcome, *see Parra v. Wright*, No. 11-CV-6270, 2013 WL 6669235, at *7 (W.D.N.Y. Dec. 18, 2013).

## II. Defendants' Motion

### A. Exhaustion of Remedies

In support of their motion for summary judgment, defendants contend that most of plaintiff's claims should be dismissed because plaintiff has not exhausted his administrative remedies as to those claims.

The Prison Litigation Reform Act of 1995 ("PLRA") requires that prior to commencing litigation, a prisoner must exhaust all available administrative remedies. 42 U.S.C. § 1997e(a). The PLRA's exhaustion requirement pertains to "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). *See Doe v. Selsky*, 948 F.Supp.2d 306, 308-09 (W.D.N.Y. 2013).

Whether a prisoner has satisfied the exhaustion requirement must be determined according to the procedures provided by the state in which he is held. New York provides a three-step grievance process, comprising the filing of a grievance and two levels of appeal from any adverse decision. *See Brownell v. Krom*, 446 F.3d 305, 309 (2d Cir. 2006)); *Brunson v. Jonathan*, 727 F.Supp.2d 195, 196 (W.D.N.Y. 2010).

In the case at bar, defendants have presented evidence, based on DOCCS records, that plaintiff timely filed and exhausted four grievances between May 8, 2013 and the end of that year. *See* Declaration of Jeffery Hale (Dkt. #14-3) and Ex. A. The only one of those four that was filed at Five Points was filed on March 21, 2013, and related to plaintiff's being denied a wrist brace. Two grievances were filed at Great Meadows Correctional Facility on August 6 and September 12, and related respectively to plaintiff's being denied the use of a lavatory and to an

alleged improper search. The fourth exhausted grievance was filed on November 19, 2013 at Attica, and related to plaintiff's being kept on Phase I status. *See id.* at 6, 7.

In response to defendants' motion, plaintiff has asserted that there are genuine issues of material fact, but those mostly relate to the underlying events, *e.g.*, whether the charges against plaintiff were justified, whether plaintiff resisted when the C.O.s entered his cell, and so on. *See* Dkt. #18-1. Plaintiff asserts that he "attempted to grieve the false charges of retaliation to violations of 1st Amendment concerns," but that under New York's regulatory scheme, the "hearing officer's handling of the hearing is non-grievable." Allah Aff. (Dkt. #18-3) ¶ 5.

It is not clear what plaintiff means by "false charges of retaliation to violations of 1st Amendment concerns," but it seems that he may be confusing, or attempting to blur, the conduct of the hearing with the underlying charge. Under New York regulations, "an individual decision or disposition resulting from a disciplinary proceeding ... is not grievable." 7 N.Y.C.R.R. § 701.3(e)(2). In addition, though a disciplinary appeal is sufficient to exhaust a claim that the inmate was deprived of due process at a disciplinary hearing, allegations of staff misconduct related to the incidents giving rise to the disciplinary proceeding must be separately grieved. *See Fox v. Lee*, No. 15-CV-390, 2018 WL 8576600, at *8 (N.D.N.Y. Dec. 18, 2018); *Rosales v. Bennett*, 297 F.Supp.2d 637, 639 (W.D.N.Y. 2004).

In any event, the regulations make clear that inmates are not procedurally barred from grieving matters relating to the conduct of a hearing on disciplinary charges, or to the factual matters giving rise to the charges. What is not grievable is the *result* of the hearing. In other words, a grievance is not meant to serve as a means to appeal from the outcome of the hearing, absent some procedural irregularities during the disciplinary proceedings. The New York

regulatory scheme provides for administrative appeal from a hearing decision, which plaintiff successfully utilized here, based on the absence of a certain witness.

Defendants' contention that plaintiff did not exhaust his remedies as to his claims of assault, improper searches, false misbehavior reports, and retaliation thus stand unrebutted.

The Second Circuit has recognized that while the exhaustion requirement is mandatory, three exceptions exist. A prisoner's failure to comply with the exhaustion requirement is justified "when (1) administrative remedies are not available to the prisoner; (2) defendants have either waived the defense of failure to exhaust or acted in such a way as to estop them from raising the defense; or (3) special circumstances, such as a reasonable misunderstanding of the grievance procedures." *Ruggiero v. County of Orange*, 467 F.3d 170, 175 (2d Cir. 2006). *See Lacourt v. Jones*, No. 14-CV-183, 2018 WL 1718738, at *6 (W.D.N.Y. Apr. 9, 2018).

None of those exceptions applies here. Plaintiff has admitted that there was a grievance procedure available to him, and states that he filed grievances as to some of the matters raised in the complaint, *see* Complaint at 15, but he has not refuted defendants' proof that the only grievances he exhausted during the relevant time frame were the four listed above.

Defendants have done nothing indicating a waiver of the exhaustion defense, or that would warrant estopping them from raising that defense, nor is there any basis upon which to find "special circumstances" that would justify excusing plaintiff from compliance with the exhaustion requirement. Plaintiff's claims relating to alleged assault, improper searches, false misbehavior reports and retaliation must therefore be dismissed for failure to exhaust administrative remedies.

### B. "Exposure" Jumpsuit and Wrist Brace

Plaintiff alleges that he was improperly placed in an exposure jumpsuit, and that a sign reading "EXPOSER" was placed outside his cell. Plaintiff alleges that this caused him to suffer "psychological injuries," and that this "libel and slandering ... humiliated" him. Complaint at 14.

Courts have held that the use of so-called exposure jumpsuits does not in itself violate prisoners' constitutional rights. Some of the cases in which courts have reached that conclusion were brought by this plaintiff. *See Allah v. Murphy*, 699 Fed.Appx. 41 (2d Cir. 2017) (affirming district court's conclusion that plaintiff "Allah did not have a liberty interest in being free from wearing an exposure jumpsuit or from transfer to a different unit," and that "the exposure jumpsuit did not deprive Allah of his basic human needs"); *Allah v. Hilton*, No. 13-CV-826, 2016 WL 11265991, at *12-*14 (N.D.N.Y. May 9, 2016) (concluding that plaintiff had not demonstrated that his forced use of a jumpsuit deprived him of basic human needs, so as to state an Eighth Amendment claim, or that it supported plaintiff's claim that he was deprived of a cognizable liberty interest), *report and recommendation adopted*, 2017 WL 1194502 (N.D.N.Y. Mar. 31, 2017).³ *See also Barrow v. Van Buren*, No. 12-cv-1268, 2015 WL 417084, at *15 (N.D.N.Y. Jan. 30, 2015) (finding that the physical discomfort of wearing jumpsuit "appear[ed] to be little more than an annoyance" and that whatever verbal abuse was directed at plaintiff by fellow inmates or staff while he was wearing the jumpsuit did not give rise to an Eighth Amendment violation), *aff'd*, 707 Fed.Appx. 57 (2d Cir. 2017). Plaintiff has identified no facts or circumstances that call for a different result here.

---

³ *Murphy* arose from incidents that occurred in July and August 2013, while plaintiff was housed at Great Meadow Correctional Facility. *See* 2016 WL 4401069 (N.D.N.Y. May 16, 2016). *Hilton* stemmed from events occurring in the spring of 2011, while plaintiff was at Marcy Correctional Facility. *See* WL 11265991.

In addition, the PLRA precludes an inmate from bringing an action seeking damages "for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). "While 'there is no statutory definition of "physical injury" as used in section 1997e(e),' the Second Circuit has held that a plaintiff's physical injury must be 'more than *de minimis*.'" *Abreu v. Nicholls*, No. 04-CV-7778, 2011 WL 1044373, at *3 (S.D.N.Y. Mar. 22, 2011) (quoting *Liner v. Goord*, 196 F.3d 132, 135 (2d Cir. 1999)), *report and recommendation adopted*, 2012 WL 1079985 (S.D.N.Y. Mar. 30, 2012).

Although plaintiff has alleged that he was assaulted by four C.O.s when they entered his cell on May 8, any physical injuries he sustained in that alleged assault were not proximately caused by his wearing the jumpsuit. It is plain from his submissions that plaintiff alleges no more than emotional distress and humiliation as a result of being forced to wear the jumpsuit. Even assuming that the jumpsuit may have been inconvenient or uncomfortable to wear (although there is no evidence that it was), that is not enough. Plaintiff's claim for compensatory damages based on his having to wear the jumpsuit is barred for that reason as well.

Plaintiff's allegation that he was temporarily prevented from wearing a "wrist sleeve" (presumably some type of brace) while he was handcuffed, *see* Complaint ¶ 40, also fails to state a claim. There is no evidence that this caused plaintiff any objectively serious pain or injury, or that defendants acted with a culpable state of mind. *See Estelle v. Gamble*, 429 U.S. 97, 104-06 (1976) (discussing objective and subjective components of an Eighth Amendment claim).

To the extent that plaintiff's complaint can be read as asserting a claim that defendants' actions prevented him from moving to Phase II status, the claim must be dismissed because "[i]nmates are not entitled to any particular housing status ... ." *Pritchett v. Portoundo*, No.

03CV378, 2005 WL 2179398, at *4 (N.D.N.Y. Sept. 9, 2005). *See also Krull v. Oey*, 19-CV-142, 2019 WL 1207963, at *6 (N.D.N.Y. Mar. 14, 2019) ("Courts in this Circuit have consistently held that there is no protected liberty interest in both the placement in, and removal from prison programs") (citing cases); *Aguiar v. Terrell*, No. 11-CV-3944, 2011 WL 3665170, at *2 (E.D.N.Y. Aug. 19, 2011) ("It is well settled that prisoners are not entitled to dictate where they are housed") (citing *Montanye v. Haymes*, 427 U.S. 236, 243 (1976)); *Tinsley v. Greene*, No. 95-CV-1765, 1997 WL 160124, at *5 (N.D.N.Y. Mar. 31, 1997) ("Inmates in the New York system have no right to be incarcerated in any particular institution, cell or block of cells, nor do they enjoy a right to be housed in the general prison population or to participate in any particular program offered at an institution").

### C. Due Process

Plaintiff alleges that he was denied due process of law in connection with two disciplinary proceedings: the hearing on the charges stemming from the May 8 incident, and another concerning an incident in March 2013.

Plaintiff's claim arising out of the March hearing have already been dismissed by the Court. (Dkt. #8). The 30-day keeplock sentence imposed on plaintiff does not implicate any protected liberty interest. *See id.* at 4. *See also Smith v. Fischer*, No. 13-CV-6127, 2016 WL 3004670, at *15 (W.D.N.Y. May 23, 2016) (stating that "there is broad agreement in this Circuit that keeplock or SHU confinement of 30 days or less in New York prisons does not implicate due process") (internal quote omitted); *Johnson v. Schiff*, 2013 WL 5466218, at *12 (N.D.N.Y. Sept. 13, 2013) (characterizing as "unanimous" the view that thirty days or less in SHU does not

implicate liberty interest), *report and recommendation adopted*, 2013 WL 5466638 (N.D.N.Y. Sept. 30, 2013).

As to the May hearing, the evidence shows that because plaintiff had accumulated so much SHU time as a result of prior infractions, the SHU sentence imposed as a result of that hearing had no practical effect. First, plaintiff alleges that the result of that hearing was reversed on administrative appeal. Complaint ¶ 30. Defendants have also submitted proof that at the time he was sentenced on the May 2013 charge, plaintiff had already been sentenced, after numerous other unrelated disciplinary proceedings, to more SHU time than he could possibly serve. *See* Hillel Deutsch Decl. (Dkt. #14-4) Ex. A.

There is thus no evidence that plaintiff ever served any SHU time or suffered other adverse consequences as a result of the May 2013 hearing. Absent some concrete harm, plaintiff has no due process claim.

Even if the Court were to decide this claim on the merits, I would grant defendants' motion. Plaintiff's allegations that Levac, the hearing officer, was biased against him are based on no more than his subjective impressions. But "[a]n inmate's own subjective belief that the hearing officer was biased is insufficient to create a genuine issue of material fact" that can defeat a well-supported motion for summary judgment. *Williams v. Meyer*, No. 16-CV-857, 2019 WL 4059012, at *4 (W.D.N.Y. Aug. 28, 2019) (quote omitted).

While plaintiff was apparently denied witnesses at the May hearing, the guilty finding was reversed on appeal for that reason, and, as explained above, plaintiff suffered no adverse consequences. Plaintiff thus received all the process which he was due.

**D. Other Matters**

The Court's findings and conclusions set forth above render it unnecessary to reach the other arguments advanced by defendants. I note nonetheless that plaintiff's claims against defendants in their official capacities must be dismissed. To the extent that plaintiff seeks monetary damages, such claims are barred by the Eleventh Amendment. *Kentucky v. Graham*, 473 U.S. 159, 169 (1985). While plaintiff also states that he seeks an injunction compelling defendants to stop using their "Exposure Control Policy," *see* Complaint at 15, he has set forth no valid basis for such relief.

In addition, plaintiff's claims against defendants VanBuren, Sheahan, and Piccolo must be dismissed for lack of personal involvement. Even construing the record in the light most favorable to plaintiff, those defendants played no role in the events giving rise to plaintiff's claims, as required for liability under § 1983. *See McKenna v. Wright*, 386 F.3d 432, 437 (2d Cir. 2004); *Colon v. City of Rochester*, __ F.Supp.3d __, 2019 WL 6629276, at *16 (W.D.N.Y. 2019).

Plaintiff's cross-motion for summary judgment as to the liability of defendants Levac and Sheahan is denied, for the reasons stated above.

## CONCLUSION

Defendants' motion for summary judgment (Dkt. #14) is granted, plaintiff's motion for partial summary judgment (Dkt. #16) is denied, and the complaint is dismissed.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
January 30, 2020.